TERRITORY OF HAWAII TO THE USE OF LEWERS & COOKE, LIMITED, ET AL., *v.* LINO FERNANDEZ, CHARLES EDWARD KING AND M. E. INDIE.

, No. 2047.

Argued November 15, 1932.     Decided January 9, 1933.

Perry, C. J., Banks and Parsons, JJ.

OPINION OF THE COURT BY PARSONS, J.

This is an action brought pursuant to the provisions of section 2679, R. L. 1925 (prior to its amendment by Act 163, L. 1931), in the name of the Territory of Hawaii to the use of certain creditors upon the bond of a contractor engaged in the construction of a public work, to-wit, the Territorial Insane Asylum at Kaneohe.

The complaint alleges in effect and among other things that on August 30, 1926, defendant Lino Fernandez entered into a formal contract with the Territory of Hawaii for said construction and other public work in connection therewith, a copy of said contract being attached to said complaint as Exhibit A thereof; that thereafter under date of September 7, 1926, the defendant Lino Fernandez, as principal, and defendants Charles E. King and M. E. Indie, as sureties, pursuant to the provisions of said section 2679, executed a bond, copy of which is annexed to said complaint as Exhibit B thereof, in the amount of $48,080, for the faithful performance of said contract and for the prompt payment of all persons

furnishing labor and/or materials to said contractor to be used by him in the prosecution of said work; that thereafter certain named corporations, individuals and copartnerships (the "use-plaintiffs" herein), at the special instance and request of said contractor, furnished labor and materials to said contractor, which said labor and materials were used in the prosecution of the work provided for in said contract; that said contractor, notwithstanding due demand upon him, has failed to pay the claims of said creditors for said labor and materials, a list of said creditors and of their respective claims at a reasonable valuation thereof, aggregating $92,627.49, being set forth in said complaint; that performance of said contract was finally completed and final settlement thereof was made in March, 1930. Judgment was prayed against the defendants jointly and severally in the full amount of the bond, with interest and costs. Issue was joined by the general denial of the three defendants. Upon demand by the defendants the case was tried before a jury.

At the hearing evidence was introduced and was undisputed as to the execution of the contract and bond and the completion of the work of construction substantially as alleged. Liability was admitted by the defendants in the action with respect to the claims of the Hawaiian Electric Company, Limited, W. W. Dimond & Company, Limited, and V. J. Burgess, in the total sum of $19,756.04, leaving a balance of $28,323.96 to be proved in order to entitle plaintiffs, in the event of sufficient proof in other respects, to a verdict and judgment in the principal amount claimed, namely, $48,080, the full penalty named in said bond. In support of the allegations of the complaint the plaintiffs introduced evidence as to the unpaid claims of Lewers & Cooke, Limited, W. W. Dimond & Company, Limited, Hawaiian Electric Company, Lim-

ited, Lee Lup & Company, J. K. Wong Garage and Acme Auto Supply Company.

Plaintiffs introduced, and the court admitted without objection, as plaintiffs' Exhibit 72, a typewritten letter dated September 1, 1926, addressed to Lewers & Cooke, Limited, one of the creditors for whose use this action was brought, signed by the defendants Charles E. King and M. E. Indie, with the written approval of Lino Fernandez, which letter we quote as follows:

"As bondsmen for Mr. Lino Fernandez on his contract calling for the construction of the new Insane Asylum at Kaneohe, we request that you advance Mr. Fernandez the necessary funds to meet payrolls and for the purchase of materials not supplied by yourselves.

"(a) We agree that the overdraft on this account, subject to interest as below stated, covering both cash advanced and materials purchased from you, will not exceed at any one time the sum of $20,000. We understand that interest at rate of 7% per annum will be charged on the overdraft based on charging interest from the date of advance on any cash and on allowing the usual time for the payment of invoices for your material, i. e., these invoices shall be due on the fifteenth of the month following the date of delivery. We jointly and severally agree to protect you on these advances of cash and on the bills for materials supplied by you.

"(b) We further agree that all materials will be purchased through you which you are in a position to supply, in all cases where your prices are lower than those quoted by others or substantially the equal of those quoted by others.

"We ask, on all cash advances made by you, that you have the O. K. of Mr. Fernandez in writing in support of the payment and in the case of payrolls, that you require of Mr. Fernandez a copy of the payroll signed by himself before the cash is advanced, and that you request the original payroll vouchers to be filed with you as soon as practical thereafter. In case these original payroll vouchers are not furnished within a reasonable time, we ask that you notify us in writing.

"We further request that you secure from Mr. Fernandez an assignment to you of all payments as they become due on the above contract, including extras.

"We understand that you will keep a separate account of all receipts and disbursements under this contract for our inspection, separate from any other accounts you may have with Mr. Fernandez or with either of us.

"Mr. Lino Fernandez and Mr. Henry Fernandez are each to take out four policies of life insurance, each policy to be in the amount of $5000., containing benefit clauses in case of total disability, and Mr. Lino Fernandez is also to take out fire insurance on this work. In all cases the premiums will be paid as a cost on the job, the policies will be assigned to you and any funds collected under any of these policies will be used for the benefit of the job."

Under date of September 2, 1926, as shown by part of defendants' Exhibit 1, was addressed to the auditor of the Territory a letter signed by Lino Fernandez, as follows: "Kindly pay all monies due me on account of the construction of the Insane Asylum at Kaneohe directly over to Lewers & Cooke, Limited." This letter bears the receipt stamp of the auditing department dated the following day.

Under date of November 17, 1926, Lino Fernandez wrote to Lewers & Cooke as follows: "Under date of September 2, 1926, I gave you an assignment of all monies due me from the Territory of Hawaii on the Insane Asylum job at Kaneohe.

"It is my desire that such amounts as you receive shall first be used to off-set any cash advances as you may make me from time to time; the balance to be applied against the materials purchased from you." (Plaintiffs' Exhibit 74)

Under date of January 22, 1927, Lino Fernandez cabled Charles E. King, then in California, as follows: "Balance with Lewers & Cooke exceeds original agreement twenty thousand stop request wire authorizing all neces-

sary advances labor materials will wire two thousand on receipt of authorization," to which King cabled in reply: "Authorization requested in your cablegram of twenty-second granted wire money through bank address Golden-state Hotel thanks." (Plaintiffs' Exhibit 73)

There is undisputed evidence that under one or more of the various authorizations above referred to Lewers & Cooke, Limited, advanced, in cash, to or on account of Lino Fernandez in respect to said contract, the sum of $125,808.29, and that in addition thereto the same corporation furnished materials to said contractor on account of said contract to the reasonable value of $88,755.96. There is also evidence that Lewers & Cooke, Limited, received from the Territory for application under said agreements the sum of $141,083.48. Said last named sum was applied by Lewers & Cooke, Limited, in extinguishment of its claim for cash advanced, leaving a credit balance of $15,275.19, which balance was then applied as per agreement on account of its said bill for materials, leaving a net unpaid claim for materials in the sum of $73,480.77—a sum far in excess of the balance of $28,323.44 necessary to be proved (as hereinbefore set forth) in order to entitle the plaintiffs to a verdict and judgment for the full amount of $48,080 named in the bond. Both sides having rested the court, upon motion of the plaintiffs, directed, and the jury returned, a verdict for the plaintiff and against the defendants in the amount prayed for in the complaint.

The case is before us upon the bill of exceptions of one of the defendants only, namely, Charles E. King, one of the sureties upon said bond.

Defendant's bill contains twenty-eight exceptions. The first exception is to the refusal of the court to grant the request of counsel for the defendant that the jurors be permitted to make written notes of the testimony. In

our view, hereinafter set forth, that the court was justified upon the evidence in taking the case from the jury by directing a verdict for plaintiff, if the court erred (which we do not decide), in refusing such permission, the error was harmless in that it did not and could not affect the result; and the exception is therefore overruled.

Defendant's exception two, as set forth in the opening brief, "deals with the admission of charge slips (1) where the handwriting of the person making the charge was not identified, and (2) where it was not shown that the supplies went into the Kaneohe job—as the job was generaly called." The charge slips above referred to dealt solely with the account of the Acme Auto Supply Company, a copartnership whose members are named in the complaint among the creditors for whose use the action was brought. Foundation for the introduction of the slips was sought to be laid by the testimony of Tin Hoon Young, one of the copartners whose name, by amendment made during the course of the trial, was substituted with two others for the copartners originally named in the complaint. The total claim of the copartnership, as set forth in the complaint and in the testimony of Tin Hoon Young, is $1112.95. According to the uncontradicted testimony of said witness said claim is for "materials of gasoline, oil and grease and tires and tire repairs * * * furnished to Mr. Lino Fernandez' trucks on the Kaneohe job," for which the witness had the original receipts or documents indicating the delivery of these several items of grease and oil. The charge slips were made in the regular course of business by the witness and by his employees. The witness testified as to his ability to identify about ninety-nine per cent of the handwriting. In view of the holding which we now make, namely, that undisputed evidence of a total indebtedness, as alleged, in the sum of $92,627.49 was not necessary to entitle the plaintiff

to a directed verdict in the sum of $48,080 as prayed but that such proof of an indebtedness distributed among the creditors named, in the sum of $28,323.96 over and above the $19,756.04, upon the claims admitted by the defendant, was sufficient to sustain such verdict, it was not necessary for the partners of the Acme Auto Supply Company to prove their entire claim. Without deciding that all of the slips were or were not properly identified it is apparent from a reading of the transcript that the greater part of them were so identified. Furthermore, under the rule hereinafter discussed in our consideration of exception three, materials included in the account of the Acme Auto Supply Company were sufficiently shown to have been furnished by said copartnership to the contractor and "used in the prosecution of the work provided for" in said contract within the purview of section 2679, R. L. 1925, and as conditioned in said bond, to permit recovery on account of non-payment therefor in an action on said bond. For this reason the error, if there was error (which we do not decide) in the admission of part of the charge slips, was harmless error and was not sufficient to entitle the defendant to a reversal upon exception two.

During the cross-examination of plaintiffs' witness J. E. Wong, counsel for defendant said: "With respect to the testimony of this witness and that of the two preceding, to the effect that materials and labor furnished were for the Insane Asylum job,—I move that the testimony be stricken on the ground that they have no knowledge personally as to the matter, and rely entirely upon hearsay." Defendant's third exception is based upon the court's denial of the motion last above quoted. The three witnesses, part of whose testimony was thus sought to be stricken, are Tin Hoon Young, Lee Chuck Soon and J. E. Wong. Tin Hoon Young's testimony is in part set forth in our foregoing discussion of exception two. The last

named witness further testified that the materials therein referred to were delivered to Lino Fernandez' employees on board of Lino Fernandez' cars, that the witness had Lino Fernandez' "word" that said materials "were for the Kaneohe job," and said charges were made in conformity with Lino Fernandez' instructions. The witness Lee Chuck Soon, according to his undisputed testimony, was the bookkeeper of Lee Lup & Company, Limited, one of the creditors for whose use this action was brought, whose claim against said contractor on the Kaneohe job was in the sum of $651.90. The charge was for lumber, molding, carpenter work, mill work and labor furnished by said last named creditor upon the orders of Lino Fernandez and Henry Fernandez (the contractor's brother and employee) for the Kaneohe job. The witness J. E. Wong is one of the creditors above referred to (doing business as the J. K. Wong Garage). His claim in the sum of $48.90 is for an unpaid balance for furnishing labor and material in repairing two trucks and an Essex car upon the order of Lino Fernandez and his said brother for the Kaneohe job. No one of the three witnesses last above named could testify that he himself had seen the labor and materials referred to in his testimony actually employed or incorporated in the construction of the Kaneohe Insane Asylum. This was not necessary. As in the case of *Red Wing Sewer Pipe Co.* v. *Donnelly*, 102 Minn. 192, 113 N. W. 1, 2: "The evidence in this case sufficiently showed that the goods were sold by the plaintiffs to the contractor, were of the kind appropriate for use in the performance of the contract, and were ordered by and delivered to the contractor for the purpose of being used in the execution of the contract." In the case last above cited this was held sufficient proof that the material entered into the construction therein referred to. Similarly, in the case at bar the evidence of the three witnesses

last above referred to was *prima facie* sufficient to show that the labor and materials so furnished by said creditors to said contractor were "used in the prosecution of the work provided for" in said contract, within the purview of section 2679, R. L. 1925, and as conditioned in the bond. *Allen* v. *Lincoln,* 12 Haw. 356, 357, is not, as urged by defendant-appellant, authority to the contrary. Quoting from the case last above cited: "Proof that the materials were ordered for the building, that they were furnished for the building and that they were delivered at the building, is at least *prima facie* proof that they were put into the building, within the meaning of the statute." Concurrence of proof of the three things first mentioned was thus held to constitute *prima facie* proof of the fourth; but the case cannot be used as a precedent for the ruling asked in this case, namely, that proof of delivery "at the building" is an essential for which proof of delivery to the contractor's trucks cannot be substituted.

Exception four, as epitomized in defendant-appellant's opening brief, "is to the admission of (1) a receipt signed by the contractor showing that he received from Lewers & Cooke, Limited, $1390.30, for paying the payroll on the Kaneohe job, (2) a canceled check from Lewers & Cooke, Limited, to the contractor, for that amount, and (3) an original payroll showing receipts of individual laborers in the amount of $1390.30."

Exceptions five to twenty-six, inclusive, are grouped and are thus presented in said last named brief: "These exceptions all concern the admission in evidence of receipted bills of creditors of the contractor, the amounts of which bills were paid by Lewers & Cooke, Limited. * * * The point of objection in these instances was similar to the objection made to the receipt in evidence of documents showing that Lewers & Cooke, Limited, had loaned money to the contractor with which he could, and did, pay his

laborers. (Exception 4)" The defendant further urges that advances in cash thus made for the payment for labor and material are not protected by the provisions of the contractor's bond. While this position is contested in the appellees' earlier brief, the issue thus suggested need not now be determined for the reason that it was not the issue before the court and jury presented by the complaint and answer of the parties. The complaint set forth the ten accounts of the creditors therein named, aggregating, as hereinbefore set forth, $92,627.49 for "labor and materials" furnished to said contractor at the latter's special instance and request, "which said labor and materials were used in the prosecution of the work provided for in said contract." The evidence as hereinbefore set forth shows that said cash items formed a separate account for an additional $125,808.29, which the plaintiff claims was fully paid by the Territory, with the consent of the bondsmen, under the contractor's order upon the auditor of the Territory dated September 2, 1926, and introduced as part of defendant's Exhibit 1. The complaint nowhere alleges failure to repay said cash advances and does not make them the basis of said action upon the bond. In this respect the evidence is consistent with the pleading. If any objection lay to the admission of evidence of said cash advances and repayments it was not, in the above recited premises, upon any ground noted and argued by counsel. We find no reversible error in its admission.

Exception twenty-seven is to the order directing a verdict and exception twenty-eight is to the verdict in favor of the plaintiff and against the defendant. The grounds argued are thus set forth by defendant's counsel: "That it was not incumbent upon the defendant King to prove that the labor and materials in question went into the so-called Insane Asylum job, but that it was incum-

bent upon the plaintiff to make full proof as to that, both as to the labor and materials actually going into the job, and as to their being necessary for the job; also that in the case of payments made by contractor * * * Fernandez for labor and materials, where money was advanced to him for that purpose by Lewers & Cooke, the payments were not made in the eyes of the law by Lewers & Cooke, but were made by Fernandez, irrespective of where he got the money. We also object to the granting of this motion on the ground that in a proceeding of this sort it is incumbent upon the jury to make findings as to the respective amounts owing to the claimants and that a verdict in this form would be entirely improper and unwarranted in law."

All of said grounds, with the exception of the last one, are disposed of adversely to defendant's contention in our rulings upon exceptions one to twenty-six inclusive. Section 2679, R. L. 1925, under which this action was brought, provides in part as follows: "If no suit shall be brought by the Territory within two months from the completion and final settlement of any contract, any person or persons who shall have furnished labor and materials as aforesaid shall, upon applying therefor, and furnishing an affidavit to the superintendent of public works or other officer or officers representing the Territory in the matter of such contract that labor or materials for the prosecution of such work have been furnished by him or them, and that payment therefor has not been made, be furnished with a certified copy of the contract and bond, upon which he or they shall have a right of action, and shall be and are authorized to bring suit in the name of the Territory in the circuit court of the circuit in which the contract was to be performed and executed, irrespective of the amount in controversy in such suit, and not elsewhere, for his or their use and benefit, against

the contractor and his sureties, and to prosecute the same to final judgment and execution; provided, that where suit is instituted by any such creditors on the bond of the contractor, it shall not be commenced until after the complete performance of the contract and final settlement thereof, and shall be commenced within four months after the performance and final settlement of the contract, and not later; and provided further, that where suit is so instituted by any such creditors, only one action shall be brought; and any creditor may file his claim in such action and be made party thereto within four months from the completion of the work under the contract, and not later. If the recovery on the bond should be inadequate to pay the amounts found due to all of the creditors, judgment shall be given to each creditor pro rata of the amount of the recovery."

The warrant voucher for final payment upon the contract above named, issued upon the estimate of the superintendent of public works upon the completion and acceptance of said work as shown by plaintiffs' Exhibit 1, bears date of March 22, 1930, approved by the auditor under date of March 25, 1930. The present action was commenced July 12, 1930. Under the above quoted provisions of the statute no other action can be brought. More than four months having elapsed since "the complete performance of the contract and final settlement thereof," no creditor, if any exists, other than those now use-plaintiffs to said action, is entitled to file a claim therein or be made a party thereto. The verdict and judgment are in the form asked and approved by all parties beneficially interested. They alone of the parties before us are legally concerned in the distribution of the proceeds. Quoting further from the statute (§ 2679, R. L. 1925): "The sureties on the bond may pay into court, for distribution among the creditors, the full amount of

the sureties' liability, to-wit, the penalty named in the bond, less any amount which the sureties may have had to pay to the Territory under the provisions of the bond, and upon so doing, the sureties shall be relieved from further liability." Such relief does not await and is not dependent upon distribution. Nor does the evidence show liability on the part of the sureties in the premises independent of their liability on the bond, the cash payments of Lewers & Cooke, Limited, having been admitted by said creditor to have been fully repaid, as above stated, by the payments made to it by the Territory upon the contractor's order, authorized by the sureties as set forth in plaintiffs' Exhibit 72, and said payments, as we now hold, having been rightly applied. The appellant therefore is in no way prejudiced by reason of the fact that the verdict and judgment are in favor of the use-plaintiffs in the lump sum of $48,080 and not for a pro rata distribution of that amount among the creditors. That being true, section 2519, R. L. 1925, as amended by Act 42, L. 1931, directly applies. Quoting from the said section: " * * * no order, judgment or sentence shall be vacated, reversed or set aside on exceptions unless the court is of the opinion that error was committed which injuriously affected the substantial rights of the party taking the exceptions."

Exceptions twenty-seven and twenty-eight present no error requiring reversal.

Appellant's exceptions are overruled.

*B. S. Ulrich* (*Ulrich & Hite* on the briefs) for plaintiffs.

*J. A. Matthewman* (also on the briefs) for defendant-appellant.